**PURITAN–BENNETT CORPORATION,**
**Plaintiff,**

v.

**Norman PRUITT, Defendant.**

**Misc. No. 4–92–MC–23001.**

United States District Court,
S.D. Iowa, C.D.

April 23, 1992.

James Borthwick of Blackwell, Sanders, Matheny, Weary and Lombardi, Kansas City, Mo., for Puritan–Bennett Corp.

Theodore Breiner of Alexandria, Va. for defendant Pruitt.

John H. Smith of Dickey, Smith, Kultala & McDonald, Keokuk, Iowa, for non-parties Nitrous Oxide Corp. and William Zimmerman.

## ORDER

BENNETT, United States Magistrate Judge.

This matter is before the court pursuant to Puritan–Bennett Corporation's ("P–B"), Motion to Reconsider pursuant to the provisions of *Fed.R.Civ.P.* 45(c)(3)(B), the Order of this court of March 3, 1992, quashing the subpoena directed to a non party— William Zimmerman, an employee of Nitrous Oxide Corporation. Nitrous Oxide Corporation, on behalf of William Zimmerman, filed a Resistance to P–B's Motion to Reconsider as well as a Motion for Protective Order.

## I. INTRODUCTION AND FACTUAL BACKGROUND.

This discovery dispute arises out of a pending action in the United States District Court for the Eastern District of Virginia, Alexandria Division. On January 30, 1992, P–B filed a complaint for damages and injunctive relief against Norman Pruitt.

P–B is and for many years has been engaged in the production of nitrous oxide gas and in research and development activities relating to improving its nitrous oxide production process. P–B is the world's largest producer of nitrous oxide gas. In the late 1960s P–B hired Pruitt as an employee. P–B entered into an employment contract with Pruitt in which Pruitt agreed that after his employment with P–B he would not disclose any information of P–B's affairs, manufacture, processing, distribution of P–B's products, or any research conducted by P–B. In late 1984 Pruitt left the employ of P–B. After leaving P–B's employment, Pruitt engaged in consulting services to Nitrous Oxide Corporation. In its litigation, P–B alleges that Pruitt wrongfully supplied Nitrous Oxide Corporation with P–B proprietary technology in the building of Nitrous Oxide Corporation's Donora, Pennsylvania plant. P–B alleges breach of contract and misappropriation of trade secrets. *See* P–B's Complaint for Damages and Injunctive Relief, ¶¶ 6–30.

Telephonic hearings were held in this matter on April 17, 1992 and April 21, 1992. James Borthwick of Blackwell, Sanders, Matheny, Weary and Lombardi of Kansas City, Missouri appeared on behalf of P–B; Theodore Breiner of Alexandria, Virginia appeared on behalf of Pruitt; and John H. Smith of Dickey, Smith, Kultala & McDonald of Keokuk, Iowa appeared on behalf of Nitrous Oxide Corporation and William Zimmerman.

## II. THE APPLICABLE LAW.

In *Carpenter v. United States,* 484 U.S. 19, 26, 108 S.Ct. 316, 320, 98 L.Ed.2d 275 (1987), the United States Supreme Court declared regarding confidential business information that:

Confidential business information has long been recognized as property. *See Ruckelshaus v. Monsanto Co.,* 467 U.S. 986, 1001–1004 [104 S.Ct. 2862, 2871–2874] 81 L.Ed.2d 815 (1984); *Dirks v. SEC,* 463 U.S. 646, 653, n. 10 [103 S.Ct. 3255, 3260 n. 10] 77 L.Ed.2d 911 (1983); *Board of Trade of Chicago v. Christie Grain & Stock Co.,* 198 U.S. 236, 250–

251 [25 S.Ct. 637, 639–640] 49 L.Ed. 1031 (1905); *cf.* 5 U.S.C. § 552(b)(4) [5 U.S.C.S. § 552(b)(4) ]. "Confidential information acquired or compiled by a corporation in the course of conduct of its business is a species of property to which the corporation has the exclusive right and benefit, and which a court of equity will protect through the injunctive process or other appropriate remedy." 3 W. Fletcher, *Cyclopedia of Law of Private Corporations* § 857.1, p. 260 (rev. ed. 1986) (footnote omitted).

In *Ruckelshaus v. Monsanto Co.,* 467 U.S. 986, 1002, 104 S.Ct. 2862, 2872, 81 L.Ed.2d 815 (1984), the court declared "because of the intangible nature of a trade secret, the extent of the property right therein is defined by the extent to which the owner of the secret protects his interests from disclosure to others.... Information that is public knowledge or that is generally known in an industry cannot be a trade secret."

In *In Re Remington Arms Co., Inc.* 952 F.2d 1029, 1032 (8th Cir.1991), the United States Court of Appeals for the Eighth Circuit recently stated that: "Federal Rule of Civil Procedure 26(c)(7) anticipates that in certain cases, discovery of trade secrets should either be limited or not permitted." *Fed.R.Civ.P.* 26 provides, in relevant part, that:

> for good cause shown, the court ... may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
>
> .    .    .    .    .
>
> (7) that a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way[.]

In view of the protection provided by *Fed.R.Civ.P.* 26(c)(7) concerning trade secrets "courts have attempted to reconcile the competing interests in trade secret discovery disputes." *In Re Remington Arms Co., Inc.,* 952 F.2d at 1032. In this regard, the court in *In Re Remington Arms Co., Inc.,* articulated the applicable burdens of proof in trade secret discovery disputes when the court stated:

> First, the party opposing discovery must show that the information is a "trade secret or other confidential research, development, or commercial information," under Rule 26(c)(7) and that its disclosure would be harmful to the party's interest in the property. The burden then shifts to the party seeking discovery to show that the information is relevant to the subject matter of the lawsuit and is necessary to prepare the case for trial. *American Standard Inc. v. Pfizer Inc.,* 828 F.2d 734, 740–41 (Fed.Cir.1987); *Centurion Indus., Inc. v. Warren Steurer & Assoc.* 665 F.2d 323, 325 (10th Cir.1981); *Hartley Pen Co. v. United States Dist. Court,* 287 F.2d 324, 331 (9th Cir.1961); *Empire of Carolina, Inc. v. Mackle,* 108 F.R.D. 323 (S.D.Fla.1985); *Coca–Cola Bottling Co. v. Coca–Cola Co.,* 107 F.R.D. 288, 291 (D.Del.1985). If the party seeking discovery shows both relevance and need, the court must weigh the injury that disclosure might cause to the property against the moving party's need for the information. *Coca–Cola Bottling Co.,* 107 F.R.D. at 293. If the party seeking discovery fails to show both the relevance of the requested information and the need for the material in developing its case, there is no reason for the discovery request to be granted, and the trade secrets are not to be revealed.

*In Re Remington Arms Co., Inc.,* 952 F.2d at 1032.

▪ In *Microwave Research Corp. v. Sanders Associates,* 110 F.R.D. 669, 674 (D.Mass.1986), the court held that the party seeking discovery of trade secrets from another must first provide a substantial factual basis for its claim. The court specifically held:

> but before a plaintiff is entitled to the type of broad discovery into a defendant's trade secrets, it must show that other evidence which it has gathered through discovery provides a substantial factual basis for its claim.

*Id.*

Thus, it is first incumbent upon P–B to make a showing that there is a substantial

basis for its claim. If this can be done, discovery should be denied unless P–B establishes the relevance of the trade secrets it seeks to inquire into of Nitrous Oxide Corporation, P–B demonstrates a true need for the information, and P–B establishes that the potential harm to Nitrous Oxide Corporation is outweighed by P–B's need for discovery. *In Re Remington Arms Co., Inc.,* 952 F.2d at 1033.

If P–B demonstrates "these showings, it is incumbent upon the district court to utilize its authority to issue an appropriate protective order to safeguard the rights of the parties." *Id.* at 1033. In this regard, the Eighth Circuit has set forth the following parameters for the drafting of an appropriate protective order:

> [i]n drafting a protective order for the discovery of trade secrets, the district court may take into account the following considerations. First, use of the discovered information should be limited to the particular lawsuit in which it has been shown to be both relevant and necessary to the prosecution of the case. *See Centurion,* 665 F.2d at 326 n. 7. Second, the protective order should limit the persons who are given access to the trade secrets. *Id.* Third, the protective order should limit, or prohibit entirely, the reproduction of all confidential documents. *Spartanics, Ltd. v. Dynetics Engineering Corp.,* 54 F.R.D. 524, 527 (N.D.Ill.1972). Fourth, the protective order may require a bond to protect against the risk of injury from the disclosure of the trade secrets. Finally, the protective order may designate an attorney to serve as a custodian for all confidential documents. *See Citicorp v. Interbank Card Ass'n,* 87 F.R.D. 43, 48 (S.D.N.Y.1980).

*In Re Remington Arms Co., Inc.,* 952 F.2d at 1033.

One final point. The parties have informed the court that Defendant Pruitt's statute of limitations argument will be heard by the court in the Eastern District of Virginia on May 8, 1992. The parties have also stated that they anticipate that the court will rule from the bench following argument on the statute of limitations question. The only matter that the parties seemingly have agreed upon is the date of December 14, 1985 as the cutoff date for purposes of the statute of limitations. In other words, any actions of Pruitt in allegedly disseminating trade secrets of P–B prior to this date would be barred by the applicable statute of limitations. P–B argues that this applicable date for statute of limitation purposes has no effect on their claim for injunctive relief. P–B asserts that the actions of Pruitt which would be barred by the statute of limitations for relief by way of damages may be asserted to establish their entitlement to injunctive relief. Pruitt, Nitrous Oxide Corporation and Zimmerman dispute this contention. The court notes that "a district court has the power under Rules 26(c) and (d) of the Federal Rules of Civil Procedure, and in a clear case the duty, to defer a burdensome discovery request pending completion of discovery on an issue that may dispose of the entire case and thereby make the request moot." *Marrese v. Am. Academy of Orthopaedic Surgeons,* 706 F.2d 1488, 1493 (7th Cir.1983).

## III. DISCUSSION.

■ In response to the request by the court during the telephonic hearing on April 17, 1992, P–B has attempted to demonstrate a factual basis for its belief that Pruitt disclosed trade secrets and proprietary information of P–B to Nitrous Oxide Corporation. *See* Plaintiff's Reply in Support of Motion to Reconsider, Subsection D entitled *Factual Basis for Belief that Pruitt Disclosed Trade Secrets and Proprietary Information to NOC.* In reviewing this document and the response of Nitrous Oxide Corporation to P–B's reply, the court is not yet persuaded that P–B has demonstrated "a substantial factual basis for its claim" as required by the court in *Microwave Research Corp.,* 110 F.R.D. at 674. However, based upon the disposition of this matter below, a final ruling on this question will be deferred until after the district court in the Eastern District of Virginia has ruled on the statute of limitations question.

The court is persuaded by the affidavit in support of resistance to motion to reconsider submitted by Ron Scott, president of Nitrous Oxide Corporation, that much of the discovery sought by P–B would require Nitrous Oxide Corporation, a non party to this litigation, to disclose important and confidential trade secrets. This is especially true in light of the representations by both P–B and Nitrous Oxide Corporation that they are the only two manufacturers in the United States of nitrous oxide—and obviously compete directly and exclusively with each other for the sales of nitrous oxide. In this regard, most courts recognize that disclosure to one's competition is more harmful than disclosure to non-competitors. *See United States v. United Fruit Co.,* 410 F.2d 553, 556 (5th Cir.), *cert. denied,* 396 U.S. 820, 90 S.Ct. 59, 24 L.Ed.2d 71 (1969); *Coca–Cola Bottling Co. v. Coca–Cola Co.,* 107 F.R.D. 288, 291 (D.Del.1985); *Amsted Indus., Inc. v. National Castings, Inc.,* No. 88 C 924, 1988 WL 90022, at * 1, 1988 U.S.Dist.LEXIS 9413, at * 2 (N.D.Ill. Aug. 19, 1988). *Compare Duracell, Inc. v. SW Consultants, Inc.,* 126 F.R.D. 571, 579 (N.D.Ga.1989) (movant granted protective order because disclosure of information to competitor would cause irreparable harm) *and American Standard, Inc. v. Pfizer,* 828 F.2d 734, 739–41 (Fed.Cir.1987) (same) *with Coca–Cola Bottling Co.,* 107 F.R.D. at 299 (movant denied protective order because adversary was not a competitor) *and Waelde v. Merck, Sharp & Dohme,* 94 F.R.D. 27, 29 (E.D.Mich.1981) (defendants denied protective order because their adversary was a government agency and not a competitor).

The court will allow very limited discovery of Nitrous Oxide Corporation and William Zimmerman, solely related to the statute of limitations question. If the district court in the Eastern District of Virginia rules in favor of Defendant Pruitt on his statute of limitations defense, then P–B's need for additional discovery may, in all probability, be moot.[1] If the district court in the Eastern District of Virginia denies Defendant Pruitt's defense on the statute of limitations question, then the court will be required to draft a protective order pursuant to the criteria set forth in *In Re Remington Arms Co., Inc.,* 952 F.2d 1029, 1033 (8th Cir.1991). The court realizes this provides the party with precious little time to complete discovery.

Therefore, the court finds that P–B will be allowed to take the deposition of William Zimmerman so long as the deposition is limited to questions relating to the statute of limitations. Should counsel for P–B, in questioning Mr. Zimmerman on the statute of limitations question, require Mr. Zimmerman to disclose any confidential trade secrets, this problem will be dealt with by the following conditions for the deposition. No representative of P–B other than its legal counsel will be allowed to attend the deposition of Mr. Zimmerman. The deposition shall remain sealed and the original of the deposition shall be supplied to the Clerk of Court in the Eastern District of Virginia under seal. This deposition shall, of course, be available to the district court in determining the statute of limitations question and for any other purpose. Neither P–B nor counsel for P–B will be allowed to retain a copy of the deposition.[2]

Counsel for P–B shall have access to the original deposition which shall be on file under seal with the Clerk of Court for the United States District Court for the Eastern District of Virginia. The United States Clerk's Office for the Eastern District of Virginia is requested to provide counsel for P–B access to this deposition prior to the hearing on May 8, 1992 so counsel may cite relevant portions of the deposition to the district court at the May 8, 1992 hearing. Furthermore, counsel for P–B shall be placed under a protective order by this

---

1. Only if P–B is correct in its assertion that their claim for injunctive relief survives a dismissal of the damage action based on statute of limitation grounds would P–B's claim for additional discovery not be moot. Resolution of that question is more appropriately addressed by the district court in the Eastern District of Virginia.

2. Counsel for Mr. Zimmerman and Mr. Pruitt, because of their identity of interest with regard to Nitrous Oxide Corporation's trade secrets, will be allowed to receive a copy of the deposition.

court that prevents them from disclosing any information obtained in the deposition of Mr. Zimmerman to their clients, expert witnesses, or any other individuals without written permission from this court.

Nitrous Oxide Corporation is required to produce the following documents pursuant to the subpoena of P–B: (1) all agreements between NOC or related entities and Pruitt–Nitropen; and (2) a business record which indicates the amounts and dates of payments of Pruitt–Nitropen by NOC or related companies. These documents shall be provided immediately to counsel for P–B and Pruitt.

During the April 21, 1992, telephonic hearing, the court ordered an *in camera* inspection of any documents referred to in Plaintiff's reply in support of motion to reconsider, section C entitled *Scope of the Subpoena*, ¶¶ 1–3, which were dated after December 14, 1985. On April 23, 1992, John H. Smith, counsel for Nitrous Oxide Company produced those documents to this court *in camera.* Two documents have been produced. One is a travel report for March of 1986, submitted by Mr. Pruitt. The other is an application to the Department of Health and Human Services, dated February 15, 1986, which counsel for Nitrous Oxide Corporation represents is in the handwriting of Mr. Pruitt. Based upon the court's review of these documents, *in camera,* they do not reveal any trade secrets and shall be immediately turned over to counsel for P–B.

The conditions concerning the deposition of William Zimmerman are restrictive indeed. This is based upon the court's belief that disclosure of trade secrets of Nitrous Oxide Corporation to their only United States competitor, P–B, would have a drastic impact on their ongoing corporate viability. Given these representations by Nitrous Oxide Corporation, the court deems the restrictions imposed to be the least restrictive method to allow discovery by P–B.

IT IS SO ORDERED.